UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

v.                                    Crim. No. 5:12-cr-00158-cr-1

Videsh Raghoonanan

## REPORT AND RECOMMENDATION
(Docs. 210, 229)

Defendant Videsh Raghoonanan, proceeding *pro se*, moves under 28 U.S.C.

§ 2255 to vacate, set aside, or correct his sentence.  (Docs. 210, 229.)  On June 26,

2013, pursuant to a Plea Agreement, Raghoonanan pleaded guilty to two counts in

the Superseding Indictment: Count One, which charged Raghoonanan with

conspiring to distribute cocaine base and 100 grams or more of heroin, in violation

of 21 U.S.C. §§ 841(a), (b)(1)(B)–(C), 846, (*see* Doc. 217 at 24–25); and Count Six,

which charged Raghoonanan with possessing a firearm in furtherance of a drug

trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  (*See* Doc. 217 at 26–27.)

On October 17, 2013, Raghoonanan was sentenced to an 85-month term of

imprisonment under Count One and a 60-month term under Count Six, to run

consecutively with the sentence on Count One.  (Doc. 167 at 40.)  Raghoonanan's

total term of imprisonment—145 months—fell in the middle of the 10- to 13-year

sentencing range that Raghoonanan had agreed to in his Plea Agreement.

(Doc. 80 at 5, ¶ 12.)

Raghoonanan now contends that his sentence should be vacated based on three grounds: (1) his defense counsel provided ineffective assistance of counsel by failing to raise several relevant legal arguments; (2), the Supreme Court's decision in *Dean v. United States*, 137 S. Ct. 1170 (2017), requires this court to vacate his sentence for possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (3), his conviction for violating § 924(c)(1)(A)(i) must be vacated in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015). (Docs. 210, 229.) The government opposes Raghoonanan's Motion, arguing that his claims are barred by the one-year statute of limitations set forth in 28 U.S.C. § 2255 and that, even if Raghoonanan's claims are not time-barred, they lack merit. (Docs. 222, 230.)

Concluding that his claims are barred by the applicable statute of limitations and that they are otherwise meritless, I recommend that Raghoonanan's § 2255 Motion be DENIED.

## Factual and Procedural Background

### I.    Charge and Guilty Plea

On March 21, 2013, the federal grand jury returned a Superseding Indictment charging Raghoonanan with six counts, including Count One, which charged Raghoonanan with conspiring to distribute cocaine base and 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a), (b)(1)(B)–(C), 846, and Count Six, which charged him with possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Doc. 38 at 1, 6.) On June 10, 2013,

a Plea Agreement was filed wherein Raghoonanan, with benefit of counsel, agreed to plead guilty to Count One and Count Six. (Doc. 80 at 1, ¶ 1.) The government and Raghoonanan agreed, pursuant to Fed. R. Crim. P. 11(c)(1)(C), that "the appropriate term of imprisonment the Court should impose [was] not less than 10 years nor more than 13 years." (*Id.* at 5, ¶ 12.) In the Agreement, the government agreed to recommend that Raghoonanan had manifested an acceptance of responsibility for his crimes pursuant to U.S.S.G. § 3E1.1(a) and (b), to not prosecute Raghoonanan for any other crimes known to the United States, and to move for dismissal of all remaining counts at time of sentencing. (*Id.* at 4, ¶ 10.)

On June 26, 2013, Raghoonanan pleaded guilty to both counts pursuant to Fed. R. Crim. P. 11. (Doc. 217 at 24–27.) During that proceeding, upon inquiry by the court concerning his understanding of the elements of Count Six, Raghoonanan initially stated that the firearm was for personal use and not "to protect the drugs or carry around with me or nothing like that" and that, as a result, he was unsure whether his firearm possession was connected to a drug trafficking crime. (*Id.* at 20.) But Raghoonanan's defense counsel acknowledged that "[Raghoonanan] exchanged drugs for the firearm" and that, based on counsel's understanding, "under the case law that's clearly a violation of [18 U.S.C. § 924(c)(1)(A)(i)]." (*Id.*) Further, the government set forth the following facts as the factual basis for Count Six: "Mr. Raghoonanan . . . distributed heroin to [another dealer] in exchange for that Smith and Wesson handgun and thereby possessed it in furtherance of the drug trafficking crime of distribution of heroin." (*Id.* at 23–24.) Raghoonanan

agreed that the government accurately stated the facts supporting the offense charged under Count Six and pleaded guilty to "knowingly possess[ing] a firearm, that is, a Smith and Wesson 40 caliber pistol in furtherance of a drug trafficking crime." (*Id.* at 24, 25.)

## II.    Sentencing

A presentence report (PSR) was submitted to the court in anticipation of sentencing. The PSR noted that Raghoonanan's plea of guilty to violating 21 U.S.C. § 841(b)(1)(B) required imposition of a five-year mandatory-minimum term of imprisonment and that his plea of guilty to violating 18 U.S.C. § 924(c)(1)(A)(i) required imposition of another five-year mandatory-minimum term that, by statute, had to be imposed to run consecutively to Count One. (PSR at 20, ¶ 108.) The PSR preliminarily concluded that Raghoonanan faced an advisory Sentencing Guideline imprisonment range of 135 to 168 months, based on an adjusted offense level of 33 and a Criminal History Category of I. (*Id.* ¶ 109.) But, given that 18 U.S.C. § 924(c) required the imposition of a 60-month consecutive mandatory-minimum term, the PSR further concluded that the Guideline imprisonment range was 195 to 228 months. *Id.* Finally, the report noted that the parties had agreed, pursuant to Fed. R. Crim. P. 11(c)(1)(C), that the term of imprisonment should not be less than 10 years or more than 13 years, or 120 to 156 months. (*Id.* ¶ 110.)

On October 17, 2013, Raghoonanan appeared for sentencing. (Doc. 167.) In response to the Court's question, he agreed that there were no factual errors in the

PSR.[1]  (*Id.* at 2.)  Defense counsel advocated for a 10-year sentence within the agreed-upon 10- to 13-year range.  (*Id.* at 6, 12.)  Counsel pointed out that Raghoonanan had no prior convictions nor prior involvement with the federal criminal justice system.  Counsel also noted that it was highly probable that Raghoonanan, a citizen of Trinidad and Tobago, would be deported after serving his sentence and that, as a result, he would be removed to a country where he had no community connection, without being eligible for reentry to the United States. (*Id.* at 6–8.)  The government argued for a 13-year term of imprisonment, pointing out that Raghoonanan directed a wide-ranging drug-distribution conspiracy and that he carried a firearm while directing this conspiracy.  (*Id.* at 17–22.)

After hearing arguments of counsel and affording Raghoonanan an opportunity to speak, the court sentenced Raghoonanan to a total term of 145 months: an 85-month term under Count One and a 60-month term under Count Six, each term to run consecutively with the other term.  (*Id.* at 40.)  In arriving at this sentence, the court appropriately weighed the sentencing factors set forth in 18 U.S.C. § 3553(a)(1).  The court analyzed the nature and circumstances of the conspiracy, noting that Raghoonanan used firearms to threaten other people, that the conspiracy continued for a long period of time, and that a substantial amount of drugs were distributed resulting in significant "human wreckage." (*Id.* at 34–36.)  The court also reviewed Raghoonanan's personal history and

---

[1] In a previous written acknowledgment, Raghoonanan also stated that he had "read and discussed the PSR with [his] attorney."  (Doc. 143.)

characteristics, observing that Raghoonanan had effectively wasted his intelligence and organizational skills on the conspiracy. (*Id.* at 38.) Balancing these factors, the court imposed the 145-month term of imprisonment, a sentence that fell in the middle of the 10- to 13-year sentencing range set forth in the Plea Agreement. (Doc. 80 at 5, ¶ 12.) Raghoonanan did not directly appeal any aspect of his conviction or sentence.

## III.    Raghoonanan's § 2255 Motion and Amended Motion

On May 1, 2017, Raghoonanan filed the present § 2555 Motion to Vacate, Set Aside, or Correct Sentence. (Doc. 210.) In his Motion, Raghoonanan contends that his defense counsel was ineffective for failing to argue that Raghoonanan's "sentence under 18 U.S.C. § 924(c), which relates to the use of a firearm during a drug trafficking crime . . . falls under *Watson v. United States*, 552 [U.S.] 74 [(2007)]." (Doc. 210-1 at 3.) He also claims that the U.S. Supreme Court's decision in *Dean* entitled him to a resentencing because "his consecutive sentence under 18 U.S.C. § 924(c) . . . is now in the district court's discretion." *Id.* Finally, he claims that his Motion is timely under 28 U.S.C. § 2255(f)(3) and that, alternatively, he is "actually innocent" of violating 18 U.S.C. § 924(c)(1)(A). (*Id.* at 3–4.) The government opposes the Motion, asserting that his claims are barred by the one-year statute set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, § 105, 110 Stat. 1214 (codified as 28 U.S.C. § 2255(f)) and that, even if not time-barred, his claims would not succeed on the merits. (Doc. 222.)

Subsequently, Raghoonanan filed a Reply—in which he again argues that his counsel was ineffective for failing to raise *Watson* (Doc. 226)—and he filed a Motion to Amend his § 2255 Motion, which was granted. (Docs. 227, 228, 229.) Therein, Raghoonanan claims that his counsel was ineffective for two new reasons: (1) that, based on *United States v. Combs*, 369 F.3d 925, 929 (6th Cir. 2004), his counsel failed to challenge the sufficiency of the 18 U.S.C. § 924(c) charge in the Superseding Indictment, (Doc. 229 at 8); and (2) that defense counsel should have argued Raghoonanan did not knowingly conspire to distribute controlled substances under *McFadden v. United States*, 135 S. Ct. 2298 (2015). (Doc. 229 at 13.) He further alleges in his Amended Motion that his firearm possession charge under 18 U.S.C. § 924(c)(1)(A)(i) should be vacated in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015). (Doc. 229 at 4.) Again, the government opposes Raghoonanan's Amended Motion, reiterating its argument that Raghoonanan's claims are barred by the AEDPA's statute of limitations and that they are also meritless. (Doc. 230.) In a Reply and Memorandum to the government's second response in opposition, Raghoonanan repeats the arguments raised in his Amended Motion. (Doc. 231 at 2, 5, 9.)

As discussed below, the various claims that Raghoonanan raises in his Motion and Amended Motion are barred by the statute of limitations because they were not brought within one year of the four triggering dates set forth in 28 U.S.C. § 2255(f)(1)–(4). Further, even if the claims were timely, they are meritless.

## Analysis

Raghoonanan asserts that his sentence should be set aside based on three general contentions: (1) his counsel provided ineffective representation in multiple ways; (2) the Supreme Court's decision in *Dean*, 137 S. Ct. 1170, requires this court to vacate his sentence for possessing a firearm in furtherance of drug trafficking crime under 18 U.S.C. § 924(c)(1)(A)(i); and (3), his conviction for violating § 924(c)(1)(A)(i) should be vacated in light of *Johnson*, 135 S. Ct. 2551.[2] (Docs. 210, 229.) Below, each argument is addressed in turn, keeping in mind that, as a *pro se* litigant, Raghoonanan's submissions must be construed liberally and his arguments must be accorded "special solicitude." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotation omitted).

## I.    Ineffective Assistance of Counsel

In his first broad claim for relief under § 2255, Raghoonanan argues that his counsel provided ineffective representation by failing to challenge the Superseding

---

[2] To the extent that Raghoonanan argues in his pleadings that "no factual basis" was offered to support his guilty plea to violating 18 U.S.C. § 924(c), (*see* Doc. 231 at 8), the record contradicts this argument. (*See* Doc. 217 at 23–24.) Moreover, he failed to raise this claim on direct review and, thus, "the claim may be raised in habeas only if the [petitioner] can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *DiSimone v. Phillips*, 461 F.3d 181, 190–91 (2d Cir. 2006) (alteration in original) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Raghoonanan has not made this demonstration.

Similarly, the record does not support Raghoonanan's claim that he could not be convicted of 18 U.S.C. § 924(c)'s mandatory-minimum sentence because he was subject to a "greater mandatory minimum sentence under other provision of law." (Doc. 232 at 2–3.) This claim is meritless. *Abbott v. United States*, 562 U.S. 8 (2010). Further, Raghoonanan failed to raise this claim on appeal and, in the present case, he does not demonstrate "either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *DiSimone*, 461 F.3d at 190–91 (quoting *Bousley*, 523 U.S. at 622).

Indictment in light of three cases: *Watson v. United States*, 552 U.S. 74; *United States v. Combs*, 369 F.3d 925; and, *McFadden v. United States*, 135 S. Ct. 2298.[3] (Doc. 211 at 3; Doc. 229 at 8, 11.)

### A.    Statute of Limitations

As stated above, the statute of limitation set forth in in 28 U.S.C.§ 2255(f) bars Raghoonanan's ineffective-assistance claims.  The one-year statute of limitations begins to run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)–(4).  Because he did not appeal from his sentence, Raghoonanan's conviction became final on October 31, 2013, the date when his time for filing an appeal expired.  Raghoonanan filed his § 2255 Motion on May 1, 2017,

---

[3] Although Raghoonanan did not directly appeal any aspect of his conviction, his ineffective-assistance claims are not procedurally defaulted.  Ordinarily, a claim not raised on direct appeal "may not be raised on collateral review unless the petitioner shows cause and prejudice."  *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)).  But an ineffective assistance of counsel claim "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal."  *Id.*; *see also Rosa v. United States*, 170 F. Supp. 2d 388, 396–97 (S.D.N.Y. 2001) ("[T]o the extent that [the petitioner] raises a *bona fide* claim of ineffective assistance of counsel, the doctrine requiring that claims be raised first on [direct] appeal would not bar him from obtaining section 2255 review.").

(*see* Doc. 210), three and a half years after his conviction became final.  (Doc. 146.) Thus, Raghoonanan's Motion is barred by 2255(f)(1).  Nevertheless, Raghoonanan asserts that his § 2255 Motion is timely under § 2255(f)(3), which requires a § 2255 motion to be filed within one year from "the date on which the right[s] asserted [by the petitioner were] initially recognized by the Supreme Court," if those newly recognized rights have been "made retroactively applicable to cases on collateral review."  28 U.S.C. § 2255(f)(3); (*see also* Doc. 210-1 at 3–4).

Under § 2255(f)(3), the limitations period commences on the date the Supreme Court "initially recognized" the right asserted by the prisoner.  *Dodd v. United States*, 545 U.S. 353, 357 (2005) ("An applicant has one year from the date on which the right he asserts was initially recognized by this Court.").  To assert his ineffective assistance of counsel claims, Raghoonanan relies on two Supreme Court decisions: *Watson*, 552 U.S. 74 and *McFadden*, 135 S. Ct. 2298.  As explained in greater detail below, neither *Watson* nor *McFadden* has any bearing on the offenses for which Raghoonanan was convicted.  Under § 2255(f)(3), moreover, Raghoonanan did not file the instant Motion within one year of either case.

In *Watson*, the Supreme Court held that trading drugs for a gun cannot constitute a "use" of a firearm for purposes of 18 U.S.C. § 924(c).  552 U.S. at 83. The Court decided *Watson* on December 10, 2007, approximately 10 years before the pretrial proceedings that led to Raghoonanan's guilty plea and conviction.  (Doc. 146.)  Because *Watson* was decided before Raghoonanan's conviction became final, 28 U.S.C. § 2255(f)(3) affords him no relief as to that claim.

10

In *McFadden*, the Supreme Court held that when a defendant is charged with dealing a controlled substance analogue, the government must show that "the defendant knew that the substance was controlled under the [Controlled Substances Act] or the Analogue Act, even if he did not know its identity." 135 S. Ct. at 2302. The Court decided *McFadden* on June 18, 2015, almost two years before Raghoonanan filed the present § 2255 Motion. *Compare McFadden*, 135 S. Ct. 2298, *with* (Doc. 210). Thus, the date on which Raghoonanan's conviction became final is the controlling statute of limitations date under § 2255(f)(1). As with the *Watson* claims, because Raghoonanan did not file his § 2255 Motion within one year of the date in which his conviction became final, that claim is untimely as well. *Dodd*, 545 U.S. at 357 (holding § 2255 motion filed almost two years from date of decision was untimely).

Raghoonanan also asserts that his counsel was ineffective for failing to challenge the Superseding Indictment based on a Sixth Circuit decision: *United States v. Combs*, 369 F.3d 925 (6th Cir. 2004). In *Combs*, the court held that 18 U.S.C. § 924(c) provides for two distinct offenses, one in which the offender "uses or carries" the firearm "during and in relation to" a drug trafficking crime (the "use" offense), and the other in which the offender "possesses" the firearm "in furtherance of" the drug trafficking crime (the "possession" offense). Again, Raghoonanan cannot overcome the statute of limitations. *Combs* was decided by the Sixth Circuit and did not create a right recognized by the Supreme Court and made retroactive by the Court. *See* 28 U.S.C. § 2255(f)(3). Further, the Sixth Circuit decided *Combs*

more than a year before Raghoonanan filed the instant Motions, giving Raghoonanan one year to seek collateral review under § 2255(f)(3), which he failed to do. As a result, Raghoonanan's ineffective-assistance claim based on *Combs* is barred by the statute of limitations.

Alternatively, Raghoonanan seeks an equitable exception to the statute of limitations by asserting that he is "actually innocent" of possessing a gun in furtherance of a drug trafficking crime. (Doc. 210-1 at 4); *see also* 18 U.S.C. § 924(a)(c)(1)(A)(i). But Raghoonanan's actual-innocence claim depends on *Watson*, 552 U.S. 74, which is not applicable here. Thus, he cannot establish that he is entitled to an equitable exception to the AEDPA's statute of limitations.

Actual innocence provides an equitable exception to the AEDPA's statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 396 (2013) (concluding that actual-innocence exception applies to "an untimely first federal habeas petition alleging a gateway actual-innocence claim"). An allegation of actual innocence affords "'a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 315 (1995)). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. This is a "severely confined category" of cases because a petitioner must submit new evidence showing "it is more likely than not that no reasonable juror would have convicted [the petitioner]." *McQuiggin*, 569 U.S.at 393 (alteration in original) (internal quotation marks omitted); *see also Spence v. Superintendent,*

*Great Meadow Corr. Facility,* 219 F.3d 162, 172 (2d Cir. 2000) (holding actual-innocence exception applies if defendant shows by clear and convincing evidence "that he is actually innocent of the act on which his harsher sentence was based"). The same strict standard applies to a petitioner who pleaded guilty and did not have the evidence evaluated by a jury: he or she "must show that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him [or her]." *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000) (internal quotation marks omitted).

    Raghoonanan's reliance on *Watson v. United States* is not new evidence, let alone newly discovered evidence that clearly and convincingly establishes his factual innocence. *Cf. Spence*, 219 F.3d at 172 ("[T]he actual innocence inquiry will focus on the reliability of . . . facts that make defendant eligible for a harsher sentence under his agreement with the state."). The Second Circuit has squarely held that *Watson* does not apply where the defendant, like Raghoonanan, was convicted of possessing a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(a)(c)(1)(A). *See United States v. Gardner*, 602 F.3d 97, 102 (2d Cir. 2010) (reasoning that *Gardner* was "readily distinguishable from *Watson*"). Moreover, *Watson* was decided in 2007, well before Raghoonanan filed the instant Motion. Although Raghoonanan does not need to prove that he diligently sought new evidence to establish his actual innocence, any "[u]nexplained delay in presenting [the] new evidence" bears on whether Raghoonanan has demonstrated that it is "more likely than not that no reasonable juror would have convicted him in

the light of the new evidence." *McQuiggin*, 569 U.S. at 385 (citation omitted).

Because of this delay and because *Watson v. United States* does not apply under

these circumstances, Raghoonan's conviction for violating 18 U.S.C.

§ 924(a)(c)(1)(A)(i) does not fit into the narrowly defined category of actual

innocence. *McQuiggin*, 569 U.S. at 384.

Raghoonanan has thus failed to demonstrate that he is entitled to an

equitable exception to the AEDPA's one-year statute of limitations.

### B.   Waiver of Ineffective Assistance of Counsel Claims

Even if Raghoonanan's ineffective-assistance claims were not barred by the

AEDPA's one-year statute of limitations, he waived the claims by pleading guilty.

Because Raghoonanan does not allege that his plea was anything but knowing and

voluntary, he cannot now rely on the merits of legal precedent as a basis for

challenging his attorney's representation prior to the guilty plea.

"The settled rule is that a defendant who knowingly and voluntarily enters a

guilty plea waives all nonjurisdictional defects in the prior proceedings." *Lebowitz

v. United States*, 877 F.2d 207, 209 (2d Cir.1989). The receipt of ineffective

assistance of counsel prior to a guilty plea is a nonjurisdictional defect that falls

within this rule. *See United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996). As a

result, "[a] defendant who pleads guilty unconditionally while represented by

counsel may not assert independent claims relating to events occurring prior to the

entry of the guilty plea." *Id.* Instead, the defendant "'may only attack the voluntary

and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.'" *Id.* (alteration in original) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).

Here, the government does not raise Raghoonanan's waiver in its briefing. But the record is clear that Raghoonanan does not allege or offer any evidence that his guilty plea was anything other than knowing and intelligent. Consequently, he cannot now attack his conviction by arguing that his attorney, based on the applicable law, should have moved to dismiss the Superseding Indictment sometime before Raghoonanan knowingly and intelligently pleaded guilty to the offenses with which he was charged. *Id.*; *see also Lear v. Poole*, 711 F. Supp. 2d 288, 298 (W.D.N.Y. 2010) (defendant cannot press argument that attorney should have moved to dismiss the indictment for providing insufficient notice of the acts charged).

### C. Ineffective Assistance of Counsel Claims

In any case, Raghoonanan's ineffective-assistance claims fail on their merits. He asserts that his counsel erred by overlooking the legal rules established in three cases: *Watson*, 552 U.S. 74; *Combs*, 369 F.3d 925; and *McFadden*, 135 S. Ct. 2298. (Doc. 210 at 5–6; Doc. 229 at 8–9, 113.) Because any argument based on these cases would not have succeeded, Raghoonanan cannot prove that his counsel provided objectively unreasonable representation that prejudiced him. Thus, defense

counsel's failure to rely on the cases does not amount to ineffective assistance of counsel.[4]

## 1.    Legal Standard

To establish ineffective assistance of counsel, a petitioner must show that (1) counsel's representation fell below "an objective standard of reasonableness" under "[p]revailing norms of practice"; and (2) "affirmatively prove prejudice" by showing that there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 693–94.

With respect to *Strickland*'s first prong, the petitioner must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690.  The court then evaluates these acts or

---

[4] In addendums to his Motion to Amend, Raghoonanan raises two additional ineffective-assistance claims.  (Docs. 229-1; 229-2.)  Both are contradicted by the record and, in any case, do not satisfy the two requirements set forth in *Strickland v. Washington*, 466 U.S. 668, 688, 693–94 (1984).  First, he claims that his counsel failed to assert Raghoonanan's "lack of criminal background" at sentencing.  (Doc. 229-1.); *see also* 18 U.S.C. § 3553 (setting forth the factors to be considered in sentencing.)  But Raghoonanan's criminal history was the first factor defense counsel mentioned in the sentencing hearing, stating that "[Raghoonanan] had no prior involvement with particularly the federal criminal justice system."  (Doc. 167 at 6.)  Further, the sentencing judge considered his criminal history when sentencing him, (Doc. 167 at 32–33); thus, the outcome would not have been different even if defense counsel failed to mention Raghoonanan's minimal criminal history.  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Second, Raghoonanan claims that his counsel "was ineffective for not challenging relevant [role] in the conspiracy."  (Doc. 229-2.)  However, Raghoonanan pleaded guilty to the conspiracy charge, which, along with the ensuing conviction "comprehend[ed] all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence."  *United States v. Broce*, 488 U.S. 563, 569 (1989).  Nor does Raghoonanan identify any evidence that casts doubt on his role in the conspiracy.  Thus, no proof indicates that Raghoonanan was prejudiced by his counsel's alleged failure to challenge Raghoonanan's role in the conspiracy.  *Hill*, 474 U.S. at 58–59.

omissions based on the totality of the circumstances. *Id.* This review is highly deferential and the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Even if the conduct was professionally unreasonable, *Strickland*'s second prong requires the petitioner to establish prejudice. *Id.* at 694. In the context of guilty pleas, "to satisfy the 'prejudice' requirement" the petitioner must demonstrate "there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58 (applying *Strickland* to challenges to guilty pleas). "'Reasonable probability' is evaluated based on the likelihood that, had counsel not foregone the alleged action, the trial outcome would have been different." *Romero v. United States*, 933 F. Supp. 2d 528, 532 (S.D.N.Y. 2013) (quoting *Lockhart*, 474 U.S. at 59–60).).

### 2. *Watson v. United States*

Raghoonanan's first ineffective assistance of counsel claim rests on his expansive reading of *Watson v. United States*, 552 U.S. 74 (2007). In *Watson*, the Court held that a person who receives a firearm in exchange for drugs does not "use" the firearm during and in relation to a drug trafficking crime within the meaning of 18 U.S.C. § 924(c). *Id.* at 76. Raghoonanan now argues that, if his counsel had raised an argument based on *Watson*, the court would have dismissed the charge for possessing a firearm in furtherance of a drug trafficking crime. (Doc.

210-1 at 4.)  But Raghoonanan's argument suffers from a fatal flaw: the Second Circuit has plainly distinguished *Watson*'s holding from cases involving possession of a firearm in furtherance of a drug trafficking crime.  Thus, it was not objectively unreasonable for counsel to forego a *Watson*-based claim.

18 U.S.C. § 924(a)(c)(1)(A)(i) states that "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, *or who, in furtherance of any such crime, possesses a firearm*" shall be sentenced to a mandatory-minimum of five years' imprisonment.  18 U.S.C. § 924(a)(c)(1)(A)(i) (emphasis added).  Thus, the plain language of § 924(c) distinguishes between "possession" and "use" of a firearm.  In the Second Circuit, "possession" includes receiving a firearm in exchange for drugs.  In *United States v. Gardner*, the Second Circuit held "that acquiring a firearm using drugs as payment constitutes possessing that firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)."  602 F.3d at 99; *see also United States v. Mahan*, 586 F.3d 1185, 1189 (9th Cir. 2009) ("When a defendant accepts a gun as payment for his drugs, his sale—and thus his crime—is incomplete until he receives possession of the firearm.  We fail to see how possession that completes a drug trafficking offense is not possession 'in furtherance of' a drug trafficking offense."); *United States v. Boyd*, 209 Fed. App'x. 285, 290 (4th Cir. 2006) (per curiam) ("We conclude that accepting possession of firearms as payment for crack cocaine is possession in furtherance of a drug trafficking crime.").

That is the situation here. Count Six of the Superseding Indictment charged Raghoonanan with "knowingly possess[ing] a firearm, that is, a Smith and Wesson .40 caliber pistol, in furtherance of a drug trafficking crime" in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Doc. 38 at 6.) At Raghoonanan's change of plea hearing, the government set forth the factual basis for Count Six as follows: "Mr. Raghoonanan . . . distributed heroin to [another dealer] in exchange for that Smith and Wesson handgun and thereby possessed it in furtherance of the drug trafficking crime of distribution of heroin." (Doc. 217 at 23–24.) Raghoonanan agreed that the government accurately stated the facts and pleaded guilty to "knowingly possess[ing] a firearm, that is, a Smith and Wesson 40 caliber pistol in furtherance of a drug trafficking crime." (*Id.* at 24, 25.) Thus, at all times during the proceedings, it was clear that Raghoonanan's receipt of the gun in exchange for drugs formed the basis for the charge and subsequent plea to possessing a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(i). As such, the instant case fits squarely with *Gardner*'s analysis of possession in § 924(c)(1)(A)(i). *See Gardner*, 602 F.3d at 101 ("[A]cquiring a firearm using drugs as payment constitutes possessing that firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).").

Despite *Gardner's* clear applicability, Raghoonanan argues that, if his counsel had invoked *Watson*, the court would have concluded that Raghoonanan did not "possess" the firearm within the meaning of § 924(c)(1)(A)(i) and the count

19

would have been dismissed.[5]  (Doc. 210-1 at 3.)  As the Second Circuit concluded in *Gardner*, however, *Watson* involved an allegation of "use" of a firearm, rather than "possession" of a firearm.  602 F.3d at 102.  Specifically, the Second Circuit reasoned that *Gardner* "was readily distinguishable from *Watson*, because while it is not natural to say that a person who trades drugs for guns 'uses' the guns in the transaction, it is natural to say that a person who trades drugs for guns 'possesses' the guns 'in furtherance of' the transaction."  *Id*.  In short, Raghoonanan's reliance on *Watson* is misplaced.

Because *Watson* does not apply to a conviction for possessing a firearm in furtherance of a drug trafficking crime, Raghoonanan cannot satisfy either prong of the *Strickland* test.  In rendering reasonable counsel, Raghoonanan's attorney was under no obligation to raise legal arguments that were unlikely to succeed.  *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) ("The law does not require counsel to raise every available nonfrivolous defense."); *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("[I]t is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made."); *Acha v. United States*, 910 F.2d 28, 32 (1st Cir. 1990) ("Trial counsel was under no obligation to raise meritless claims.  Failure to do so does not constitute ineffective assistance of

---

[5] Throughout his argument, Raghoonanan sometimes argues that his conviction under § 924(c) was for "use" of a firearm, (Doc. 210 at 5–6); however, that claim is contradicted by the record.  (*See* Doc. 38 at 6; Doc. 217 at 23–25.)

counsel.").  Moreover, even if defense counsel had asserted *Watson* at some point in the pretrial proceedings, such an assertion would not have changed the outcome because *Watson* does not apply to the charge Raghoonanan pleaded guilty to.  Thus, Raghoonanan cannot demonstrate prejudice under the second prong of *Strickland*. *See id.* 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."); *Harrington v. United States*, 689 F.3d 124, 130 (2d Cir. 2012) ("[A] petitioner cannot show prejudice if the claim or objection that an attorney failed to pursue lacks merit.").

### 3.   *United States v. Combs*

Raghoonanan's second ineffective-assistance claim is based on *United States v. Combs*, 369 F.3d 925 (6th Cir. 2004).  He argues that defense counsel failed to raise a challenge to the sufficiency of the language in Count Six of the Superseding Indictment, i.e., the count charging him with violating 18 U.S.C. § 924(c)(1)(A)(i). (Doc. 229 at 7.)  But *United States v. Combs* has no bearing on the sufficiency or validity of the charging language employed in Count Six and, as a result, Raghoonanan cannot establish that his counsel provided ineffective representation.

In *Combs*, the Sixth Circuit examined an indictment that charged the defendant with "possess[ing] a firearm during and in relation to" a drug trafficking crime under § 924(c).  369 F.3d at 934 (alteration in original).  According to the Sixth Circuit, this language combined elements of two distinct offenses prohibited under 18 U.S.C. § 924(c)(1)(A): (1) *possessing* a firearm in furtherance of a drug

trafficking crime, and (2) using or carrying a firearm *during and in relation to* a drug trafficking crime. *Combs*, 369 F.3d at 930. This charging error was compounded by the court's jury instructions, which also mixed the elements, and by the court's definition of "during and in relation to" in the jury instructions. *Id.* at 934. Ultimately, the Sixth Circuit reversed the defendant's conviction, concluding that the indictment's conflated language could not be "reasonably construed to have charged [the defendant] with a crime under federal law." *Id.*

Plainly, *Combs* is not analogous to this case. Here, Count Six of the Superseding Indictment charged Raghoonanan with "knowingly possess[ing] a firearm, that is, a Smith and Wesson .40 caliber pistol, in furtherance of a drug trafficking crime" in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Doc. 38 at 6.) This language tracks the statutory language of § 924(c). *Compare* 18 U.S.C. § 924(c)(1)(A)(i), *with* (Doc. 16 at 6.). Similarly, the court reiterated this charging language at Raghoonanan's change of plea hearing, stating that the charge was "knowingly possess[ing] a firearm, that is, a Smith and Wesson 40 caliber pistol in furtherance of a drug trafficking crime." (Doc. 217 at 25.) At no time did the charge for Count Six combine the two distinct offenses described in 18 U.S.C. § 924(c) and, thus, *Combs* is not applicable.

Because *Combs* does not apply, defense counsel had no obligation to raise the argument prior to sentencing, nor can Raghoonanan prove that he was prejudiced by the absence of an argument based on *Combs*. *See Knowles*, 556 U.S. at 127;

*Mayo*, 13 F.3d at 533.  As a result, Raghoonanan cannot establish ineffective assistance of counsel.  *See Strickland*, 466 U.S. at 691.

### 4.    *McFadden v. United States*

Raghoonanan's final ineffective-assistance claim is that defense counsel failed to argue that Raghoonanan lacked the requisite mental state to be convicted of conspiring to distribute a controlled substance under 21 U.S.C. § 841(a).  (Doc. 229 at 10–13.)  He also appears to argue that defense counsel did not challenge the quantity and type of the controlled substances at issue.  (Doc. 229 at 13–15).  In making these arguments, he relies on *McFadden v. United States*, 135 S. Ct. 2298 (2015).  But, like his other claims, he cannot establish that his counsel's failure to advance an argument based on *McFadden* was ineffective.

In *McFadden*, the Supreme Court examined the requisite mental element found in the Controlled Substance Analogue Enforcement Act of 1986 (CSA), which requires certain "controlled substance analogues" intended for human consumption to be treated the same as the "controlled substances" listed in Schedule I.  135 S. Ct. at 2302; *see also* 21 U.S.C. § 813.  The Supreme Court concluded that, to be guilty of distributing a "controlled substance analogue," the defendant must know that the substance was controlled under the CSA, even if the Defendant did not know the substance's identity.  *McFadden*, 135 S. Ct. at 2302.

Raghoonanan's conviction under Count One of the Superseding Indictment did not involve a "controlled substance analogue."  (Doc. 38 at 1.)  Instead, Count One alleged that Raghoonanan conspired to distribute cocaine base and 100 grams

or more of heroin, in violation of 21 U.S.C. §§ 841(a), (b)(1)(B)–(C), 846.  (*Id.*)  At the change of plea hearing, Raghoonanan pleaded guilty "to knowingly and willfully conspir[ing] to distribute cocaine base, a Schedule II Controlled Substance, and heroin[,] a Schedule I Controlled Substance" and agreed that "the offense involved 100 grams or more of a mixture or substance containing a detectable amount of heroin." (Doc. 217 at 24–25.)  Cocaine and heroin, which are listed in Schedules I and II, are specifically excluded from the definition of a "controlled substance analogue."  *Compare* 21 U.S.C. § 802(32)(C)(i) (stating "controlled substance analogue" does not include "a controlled substance"), *with id.* § 802(6) ("The term "controlled substance" means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter."); *id.* § 812 (setting forth "controlled substances" in Schedules I and II).  As a result, the Supreme Court's analysis in *McFadden* does not apply here,[6] and Raghoonanan's counsel was not ineffective for failing to raise *McFadden*.[7]  *See Knowles*, 556 U.S. at 127; *Mayo*, 13 F.3d at 533.

To the extent Raghoonanan alleges that his defense counsel failed to challenge the amount and type of the controlled substances at issue, (*see* Doc. 229

---

[6]  Raghoonanan's reliance on *United States v. Makkar*, 810 F.3d 1139 (10th Cir. 2015), fails for the same reasons.  (*See* Doc. 229 at 13.)  *Makkar* also involved the requisite mental state to prove distribution of a "controlled substance analogue" under the CSA, it did not address distribution or possession of "controlled substances" such as cocaine and heroin.  *Id.* at 1142–43.

[7]  Even if *McFadden* had some application to this case, defense counsel could not have relied on the *McFadden* decision because the Supreme Court decided *McFadden* in June 2015, almost two years after Raghoonanan was sentenced in October 2013.  *Compare McFadden*, 135 S. Ct. 2298, *with* (Doc. 146).

at 14–15), *McFadden* does not concern the sufficiency of the evidence necessary to support a guilty plea. *See generally McFadden*, 135 S. Ct. 2298. Moreover, "[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Broce*, 488 U.S. 563, 569 (1989). As described above, Raghoonanan pleaded guilty to conspiring to distribute 100 grams or more of cocaine base and heroin, and he admitted to a factual basis for the plea. (Doc. 217 at 24–25.) "By entering a plea of guilty, [Raghoonanan was] not simply stating that he did the discrete acts described in the indictment; he [was] admitting guilt of a substantive crime." *Broce*, 488 U.S. at 570. Raghoonanan has thus failed to prove that his counsel's representation was ineffective or that he was prejudiced by the performance.

## II.   *Dean v. United States*

Raghoonanan's second general argument is that his sentence for possessing a firearm in furtherance of a drug trafficking crime should now be vacated based on the Court's holding in *Dean v. United States*, 137 S. Ct. 1170 (2017). (Doc. 210 at 5; Doc. 210-1 at 1–2). In *Dean*, the Supreme Court held that 18 U.S.C. § 924(c) does not restrict a sentencing court from considering the sentence imposed under § 924(c) when calculating a fair sentence for the predicate count or counts. 137 S. Ct. at 1176–77. As explained below, this claim is not only procedurally barred on collateral review but also untimely under the AEDPA's one-year statute of

25

limitations.  And, even if the claim survived these procedural hurdles, applying *Dean*'s holding would not alter the outcome.

## A.    Procedural Default

As an initial matter, Raghoonanan did not raise his *Dean* claim on direct appeal.  Because he cannot excuse this default by demonstrating either cause and ensuing prejudice or that he is actually innocent,[8] this court is barred from collaterally reviewing his claim.

Federal habeas review is not a substitute for direct appeal.  *Harrington*, 689 F.3d at 129.  If a defendant does not raise a claim on direct appeal, the claim will not be collaterally reviewed unless the defendant can demonstrate either (1) cause and ensuing prejudice, or (2) actual innocence.  *Bousley*, 523 U.S. at 621; *United States v. Thorn*, 659 F.3d 227, 232 (2d Cir. 2011).  A change in law may constitute cause if there is "a showing that the factual or legal basis for a claim was not reasonably available to counsel" at the time of trial.  *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999).  Actual prejudice must result from such a change in law for the claim to be collaterally reviewed.  *United States v. Frady*, 456 U.S. 152, 168 (1982).  That is, "[t]he error must have resulted in substantial disadvantage, infecting the entire trial with error of constitutional dimensions."  *Gutierrez v. Smith*, 702 F.3d 103, 112 (2d Cir. 2012) (internal quotation and alteration omitted).

---

[8]  Raghoonanan does not allege that his counsel was ineffective in failing to raise *Dean*; as a result, he cannot use that basis as an excuse for failing to raise the claim on direct appeal.  *Cf. Rosa*, 170 F. Supp. 2d at 397–98 ("[T]o the extent that [the petitioner] raises a bona fide claim of ineffective assistance of counsel, the doctrine requiring that claims be raised first on [direct] appeal would not bar him from obtaining section 2255 review.").

Alternatively, if a defendant cannot establish cause and ensuing prejudice, the defendant's claim may be collaterally reviewed upon a showing of actual innocence. As noted above, actual innocence entails proof of "factual innocence, not mere legal insufficiency," and a demonstration that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted [the defendant]." *Bousley*, 523 U.S. at 623 (internal quotation marks omitted).

In this case, Raghoonanan offers no explanation for his procedural default, let alone proof of either cause and ensuing prejudice or actual innocence. In light of his *pro se* status, it is presumed that Raghoonanan would contend that the *Dean* holding was a subsequent legal development constituting cause for the default. *Strickler*, 527 U.S. at 283 n.24. Assuming arguendo that Raghoonanan can establish cause for his procedural default, Raghoonanan was not actually prejudiced by the change in law. *Cf. Gutierrez*, 702 F.3d at 112. As explained below, applying *Dean* would not have affected Raghoonanan's sentencing and, thus, he was not prejudiced by the subsequent change in law. Similarly, Raghoonanan advances no argument that he is factually innocent of the charges. Instead, he relies on *Dean* to attack the legal basis for his sentence, not the factual basis for his plea. *Cf. Bousley*, 523 U.S. at 623 ("'[A]ctual innocence' means factual innocence, not mere legal insufficiency.").[9]

---

[9] Insofar as Raghoonanan's reliance on *Dean* is a collateral attack on his sentencing and final judgment, it is also barred because he does not allege either "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

Given Raghoonanan's failure to allege either cause and ensuing prejudice or that he is actually innocent, his claim is procedurally barred.

### B.    Statute of Limitations

If Raghoonanan's *Dean* claim is not procedurally barred, the claim cannot surmount the statute of limitations.  Like his ineffective-assistance claims, Raghoonanan asserts that his *Dean* claim is timely under 28 U.S.C. § 2255(f)(3). (Doc. 210-1 at 3.)  As described above, under § 2255(f)(3), a § 2255 motion will not be barred if it is filed within one year from "the date on which the right[s] asserted [were] initially recognized by the Supreme Court," if those newly recognized rights have been "made retroactively applicable to cases on collateral review." *Id.* § 2255(f)(3).  The Supreme Court decided *Dean* on April 3, 2017, and Raghoonanan filed his § 2255 Motion within one year of that date.  *Dean,* 137 S. Ct. at 1174; (Doc. 210 (indicating filing date was May 1, 2017).)  But the rule announced in *Dean* is not a new right made retroactive to cases on collateral review and, as a result, Raghoonanan's Motion is untimely under § 2255(f)(3).

In rare cases, the Supreme Court may clearly hold that a new rule is retroactive and apply that rule to a case on collateral review.  *See United States v. Redd*, 735 F.3d 88, 91 (2d Cir. 2013).  In other cases, a new rule may be applied retroactively if it falls within two categories of cases previously held to be retroactive: it is either a substantive criminal rule or a watershed rule of criminal procedure.  *Schriro v. Summerlin*, 542 U.S. 348, 351–53 (2004).  If the rule is substantive, such as those that narrow the reach of a criminal statute, the rule

generally applies retroactively. *Id.* at 351–52. If the new rule is procedural, the procedural rule will apply retroactively if it is a "watershed rule[] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* at 352 (internal quotation marks omitted); *see also Teague v. Lane*, 489 U.S. 288, 311 (1989) (plurality opinion).

*Dean v. United States* involved the sentencing provision in 18 U.S.C. § 924(c), which makes it a separate criminal offense to use or possess a firearm in connection with a drug trafficking crime. *See generally* 137 S. Ct. 1170 (2017). This separate firearms offense carries a mandatory-minimum and "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the . . . drug trafficking crime during which the firearm was used, carried, or possessed." 18 U.S.C. § 924(c)(1)(D)(ii). In other words, the mandatory-minimum sentence imposed pursuant to § 924(c) must be consecutive and in addition to the predicate crime's sentence.

In *Dean*, the sentencing provision in § 924(c) exposed the defendant to a 30-year mandatory-minimum, consecutive to any sentence to be imposed for the underlying crime. 137 S. Ct. at 1175. After the defendant was convicted at trial, the district court determined that a 30-year mandatory-minimum term plus 1 day for the predicate crime was "more than sufficient for a sentence in this case." *Id.* But the district court concluded that § 924(c) did not give it the discretion to impose a sentence of 30 years and 1 day. *Id.* Instead, the court concluded that, under

§ 924(c), it was required to disregard the consecutive mandatory-minimum term when sentencing the defendant for the predicate offense; thus, the court sentenced the defendant to 40 months for the predicate crime and the required consecutive 30-year mandatory-minimum term for the § 924(c) violation. *Id.* The Eighth Circuit affirmed on direct appeal. *Id.* The Supreme Court reversed, concluding that nothing "prevents a sentencing court from considering a mandatory minimum under § 924(c) when calculating an appropriate sentence for the predicate offense." *Id.* at 1178.

The Supreme Court has not specifically held that its ruling in *Dean* should be applied retroactively to cases on collateral review. *Cf. Redd*, 735 F.3d at 91; *see also Simmons v. Terris*, Case No. 17-cv-11771, 2017 WL 3017536, at *2 (E.D. Mich. July 17, 2017) ("[T]here is nothing in the Supreme Court's opinion in *Dean* to suggest that the holding is to be applied retroactively to cases on collateral review."); *In re Dockery*, 869 F.3d 356 (5th Cir. 2017) (per curiam) (denying certification because the defendant had not "made a prima facie showing that *Dean* announced a new rule of constitutional law that was made retroactive to cases on collateral review"); *Hall v. United States*, Case No. 17 C 3892, 2017 WL 3235438, at *3 (N.D. Ill. July 31, 2017) ("The *Dean* Court made no mention of applying its holding retroactively to cases on collateral review, and the United States Court of Appeals for the Seventh Circuit has yet to address whether courts should apply *Dean* as such.").

Moreover, *Dean* did not announce a substantive rule that should be applied retroactively or a watershed rule of criminal procedure. *Schriro*, 542 U.S. at 351. The *Dean* holding is not substantive because the rule does not "place[] certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Bousley*, 523 U.S. at 620 (internal quotation marks omitted). Instead, *Dean* addressed the discretion a court has when calculating an appropriate sentence under § 924(c). *See Dean*, 137 S. Ct. at 1178. Not only is this not a substantive rule, but also the *Dean* holding simply affects a judge's decision-making at sentencing and thus is not a "watershed rule[] of criminal procedure" that "alter[s] our understanding of the bedrock procedural elements" of the adjudicatory process. *Teague*, 489 U.S. at 311 (internal quotation marks and emphasis omitted). Indeed, the Second Circuit has previously concluded that rules that change the discretion afforded to judges at sentencing are not watershed procedural rules. *See Herrera-Gomez v. United States*, 755 F.3d 142, 146 (2nd Cir. 2014); *Guzman v. United States,* 404 F.3d 139, 143 (2d Cir. 2005) (finding that *United States v. Booker*, which held the Sentencing Guidelines to be advisory, did not establish a watershed rule of procedure because "the only change [is] the degree of flexibility judges . . . enjoy" in imposing sentence (alterations in original) (internal quotation marks omitted)); *see also Love v. United States*, 16–CV–6670L, 10–CR–6116L, 2017 WL 4712204, at *3 (W.D.N.Y. Oct. 12, 2017) (summarily concluding that "there is no authority that *Dean* should be applied retroactively to cases on collateral review"); *United States v. Adams*, Criminal Action No. 7:06-cr-

31

00022-1, 2017 WL 2829704, at *2 (W.D. Va. June 29, 2017) (dismissing § 2255

motion as untimely filed because *Dean* does not apply retroactively to § 2255

proceedings under the criteria discussed in *Teague*, 489 U.S. at 311–16).

Because the right recognized by the Supreme Court in *Dean* was not made

retroactively applicable to cases on collateral review, Raghoonanan's claim is barred

by the AEDPA's statute of limitations.

### C.   *Dean* Does Not Affect Raghoonanan's Sentence

Even if the statute of limitations did not bar Raghoonanan's claim, *Dean v.

United States* is inapplicable to this case.

As described above, the defendant in *Dean* was sentenced after a jury trial.

137 S. Ct. at 1174. The district court concluded that an appropriate sentence was a

30-year mandatory-minimum under § 924(c) plus 1 day for the predicate crime. But

the district court determined that it did not have the discretion to impose that

sentence under § 924(c). *Id.* The Supreme Court reversed, holding that "[n]othing

in § 924(c) restricts the authority conferred on sentencing courts by § 3553(a) and

the related provisions to consider a sentence imposed under § 924(c) when

calculating a just sentence for the predicate count."[10] *Id.* at 1176–77.

---

[10] The Second Circuit has indicated, in a summary order, that "*Dean* may have effectively overruled [the] circuit's precedent" but has not conclusively held that *Dean* abrogated *United States v. Chavez*, 549 F.3d 119, 135 (2d Cir. 2008). *United States v. Bonilla*, 700 F. App'x 82, 84 (2d Cir. 2017) (citing *Chavez*, 549 F.3d at 135). This issue need not be decided in this case, because even assuming arguendo that *Dean* abrogated *Chavez*, there is no basis to vacate Raghoonanan's sentence. *Id.*

*Dean* is factually distinct from the instant case.  Here, the court's discretion was restricted both by the binding nature of the parties' Plea Agreement and the required mandatory-minimum terms required by the statutes at issue.  In the binding Plea Agreement, pursuant to Fed. R. Crim. P. 11(c)(1)(C), Raghoonanan agreed that the appropriate sentence for both counts was not less than 10 years, or more than 13 years.  (PSR at 3–4, ¶ 6; Doc. 80 at 5, ¶ 12.).  This 10-year floor reflected the 5-year mandatory-minimum for the conspiracy to distribute 100 grams or more of heroin under 21 U.S.C. §§ 846, 841(b)(1)(B)  and the consecutive 5-year mandatory-minimum for the firearm possession charge under 18 U.S.C. § 924(c)(1)(A)(i).

Further, after full consideration of the sentencing factors under 18 U.S.C. § 3553(a), the court clearly exercised its discretion within the Plea Agreement's agreed-upon sentencing range.  (Doc. 167 at 32–33.)  For example, the court reviewed the nature and circumstances of the conspiracy, specifically noting that Raghoonanan used firearms to threaten other people, that the conspiracy continued for a long period of time, and that a substantial amount of drugs were distributed resulting in significant "human wreckage."  (*Id.* at 34–36); *see also* 18 U.S.C. § 3553(a)(1).  The court also gave full consideration to Raghoonanan's history and characteristics, noting that Raghoonanan effectively wasted his intelligence and organization skills on the conspiracy.  (Doc. 167 at 38.)  Balancing these factors, the court imposed the 85-month term for the Title 21 conspiracy charge, far below the range of 135 to 168 months for that charge under the advisory Sentencing

Guidelines.  (PSR at 20, ¶ 109.)  Plainly the court determined the appropriate sentence while recognizing the discretion afforded to sentencing courts.  *See United States v. El-Amin*, 699 F. App'x 177, 178 (4th Cir. 2017) (per curiam) (concluding *Dean* did not impact the defendant's case where the district court recognized its discretion to vary downward from the defendant's Sentencing Guideline range pursuant to the § 3553(a) factors).  Given the severity of the offenses of conviction, moreover, there is no basis to conclude that the court would have imposed a lesser sentence under *Dean*.  Instead, the evidence suggests that, within the constraints of the Plea Agreement, the court acknowledged its discretion in determining Raghoonanan's sentence for the conspiracy charge.  *Cf. Dean*, 137 S. Ct. at 1176.

## III.  *Johnson v. United States*

In his final claim, Raghoonanan argues that his sentence under 18 U.S.C. § 924(c) should be vacated in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015).  (Doc. 229 at 3–6.)  This argument fails for the same reasons as his *Dean* claim: it is barred by the procedural-default rule as well as the AEDPA's one-year statute of limitations and, even if the claim were not barred, *Johnson* does not apply to Raghoonanan's conviction.

As with his *Dean* claim, Raghoonanan provides no explanation for failing to raise his *Johnson* claim on direct appeal,[11] let alone proof of either cause and

---

[11]  Because Raghoonanan does not allege that his counsel was ineffective in failing to raise *Johnson*, he cannot use that basis as an excuse for failing to raise the claim on direct appeal.  *Cf. Rosa*, 170 F. Supp. 2d 3 at 397–98.

ensuing prejudice or actual innocence. Although cause may be demonstrated by the change *Johnson* made to the law, *see Strickler*, 527 U.S. at 283 n.24, *Johnson* has no bearing on Raghoonanan's conviction for possessing a gun in furtherance of a drug trafficking crime and, thus, Raghoonanan was not actually prejudiced by the change in law. *Cf. Gutierrez*, 702 F.3d at 112; *see also* 18 U.S.C. § 924(c). Nor can Raghoonanan establish that he is factually innocent of the charge based on a legal decision that has no bearing on his conviction. *Cf. Bousley*, 523 U.S. at 623. As a result, this court is barred from collaterally reviewing his claim.

Similarly, the statute of limitations also precludes Raghoonanan's *Johnson* claim. Although he does not assert a basis for the timeliness of his *Johnson* claim, he presumably relies again on 28 U.S.C. § 2255(f)(3), which commences the limitations period on the date the Supreme Court "initially recognized" the right asserted by the petitioner. *Dodd*, 545 U.S. at 357. However, the Supreme Court decided *Johnson* on June 26, 2015, more than a year before Raghoonanan filed his motion on May 1, 2017. (*See* Doc. 210); *see also Johnson*, 135 S. Ct. 2551. Thus, his *Johnson* claim is untimely under § 2255(f)(3). *Dodd*, 545 U.S. at 357.

Finally, Raghoonanan's *Johnson* claim is inapplicable because his conviction under 18 U.S.C. § 924(c) did not rely on a predicate crime of violence. In *Johnson*, the U.S. Supreme Court examined the residual clause of the Armed Career Criminal Act of 1984, which defined a "violent felony" as any conduct "that presents a serious potential risk of physical injury to another." 135 S. Ct. 2551, 2555–56; *see*

*also* 18 U.S.C. § 924(e).  The Supreme Court concluded that this residual clause was void for vagueness.  *Johnson*, 135 S. Ct. at 2561.

Subsequently, as Raghoonanan correctly notes, (Doc. 229 at 5), the circuit courts began applying the *Johnson* analysis to 18 U.S.C. §  924(c)(3), which defines a "crime of violence" as an offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  *Id.* § 924(c)(3)(B).  For example, the Second Circuit has held that § 924(c)(3)(B) is not void for vagueness under *Johnson*.  *See United States v. Hill*, 832 F.3d 135, 150 (2d Cir. 2016) ("Having considered each of [Defendant's] arguments that the risk-of-force clause is unconstitutionally vague, we are unpersuaded."); *but see In re Pinder*, 824 F.3d 977, 979 (11th Cir. 2016) (permitting a successive § 2255 motion where petitioner alleged that § 924(c)(3)'s definition of a "crime of violence" was unconstitutionally vague under *Johnson*).  Despite these developments after *Johnson*, this new thread of law cannot unravel Raghoonanan's conviction under § 924(c).  Raghoonanan's conviction was for possessing a firearm in furtherance of a *drug trafficking crime*, not for possessing a firearm in furtherance of a *crime of violence*.  (Doc. 146.)  As such, Raghoonanan's reliance on *Johnson* is misplaced.

## <u>Conclusion</u>

For the foregoing reasons, I recommend that Raghoonanan's Motion and Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docs. 210, 229) be DENIED.

Because the Motion and Amended Motion and other files and records in this case "conclusively show that [Raghoonanan] is entitled to no relief," there is no need to conduct an evidentiary hearing on the Motion.  28 U.S.C. § 2255(b).  Nor is there cause for issuance of a certificate of appealability, which may issue in a § 2255 proceeding "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Generally, a movant meets this burden by demonstrating that "reasonable jurists could debate whether . . . the [motion] should have been resolved in a different manner or that the issues presented [a]re adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Raghoonanan has not made this showing, and thus I recommend DENYING any request for issuance of a certificate of appealability.

I further recommend that Raghoonanan's request for counsel (Doc. 231 at 1–2) be DENIED because he has no right to appointed counsel for collateral proceedings.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further."); *Carranza v. United States*, 794 F.3d 237, 242 (2d Cir. 2015) ("[T]he constitutional right to the effective assistance of counsel extends to direct appeal, but not to collateral proceedings." (citation omitted)).

Dated at Burlington, in the District of Vermont, this 10th day of

January 2018.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within 14 days
after service thereof, by filing with the Clerk of the Court and serving on the
Magistrate Judge and all parties, written objections which shall specifically identify
those portions of the Report and Recommendation to which objection is made and
the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),
72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of
any further judicial review of the magistrate's decision." *Small v. Sec'y of Health
and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).